1

2                  IN THE UNITED STATES DISTRICT COURT

3               FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5    CHRIS BARKLEY,                    Case No.: C 11-1269 CW (PR)

6              Petitioner,             ORDER DENYING PETITION FOR WRIT
                                       OF HABEAS CORPUS AND DENYING
7         v.                           CERTIFICATE OF APPEALABILITY

8    JEFFREY BEARD, Secretary,
     California Department of
9    Corrections and Rehabilitation,

10             Respondent.

11

12        Petitioner Chris Barkley, a California prisoner[1] proceeding

13   pro se, filed a petition for a writ of habeas corpus pursuant to

14   28 U.S.C. § 2254 challenging the validity of his state conviction

15   asserting eight claims: (1) a due process violation arising from

16   the trial court's exclusion of evidence impeaching the complaining

17   witness; (2) a due process violation arising from the trial

18   court's admission of evidence of child sexual abuse accommodation

19   syndrome (CSAAS); (3) a due process violation arising from the

20   trial court's instructing on the CSAAS evidence; (4) cumulative

21   prejudice from the above three violations; (5) insufficient

22   evidence to support separate convictions for the same offense;

23   (6) a due process violation arising from the trial court's

24   decision not to disclose evidence from the victim's confidential

25   _____

26        [1] At the time Petitioner filed the federal petition, he was
     in the constructive custody of the California Department of
     Corrections and Rehabilitation and in physical custody at the
27   Tallahatchie County Correctional Facility in Tutwiler,
     Mississippi.

28

United States District Court
For the Northern District of California

file; (7) insufficient evidence of a prior strike conviction; and (8) ineffective assistance of counsel for failing to make proper objections.[2]  Respondent filed an answer and a memorandum of points and authorities in support thereof.  Petitioner has not filed a traverse.  For the reasons discussed below, the Court DENIES the petition as to all claims and denies a certificate of appealability.

BACKGROUND

I. Procedural History

On May 11, 2007, the Santa Clara County District Attorney filed an information charging Petitioner with one count of oral copulation with a minor under sixteen years of age, two counts of lewd or lascivious acts on a child aged fourteen or fifteen, one count of dissuading or attempting to dissuade a witness by use of force or threat of force, and six counts of furnishing a controlled substance to a minor by an adult, with an allegation that the minor was at least four years younger than the defendant. The information also alleged that Petitioner had a prior strike conviction and had served a prior prison term and, as to count four, that he had a prior serious felony conviction.  Court Transcript (CT) 88-96.

On September 21, 2007, a jury found Petitioner not guilty of dissuading a witness, failed to reach a verdict on one count of lewd or lascivious acts and found him guilty on all other charges. Reporter's Transcript (RT) 767-770.  Before trial, Petitioner admitted the prior conviction allegations but reserved on the

---

[2] To support his claims, Petitioner refers to the arguments in his petition to the California Supreme Court, attached as an exhibit to his petition.

issue of whether his prior conviction constituted a strike.  RT
962-64.  On December 14, 2007, the trial court sentenced
Petitioner to a term of thirty years and four months in prison.
RT 1010-14.  On January 4, 2008, the court dismissed count three,
on which the jury had failed to reach a verdict.  RT 1054.

Petitioner filed a timely appeal and, on January 12, 2010,
the California Court of Appeal struck a five-year enhancement for
the prior serious felony conviction, modified the restitution fine
and otherwise affirmed the judgment.  Ex. H.  Both parties filed
petitions for review in the California Supreme Court.  On April
22, 2010, the California Supreme Court granted Respondent's
petition for review and transferred the matter back to the Court
of Appeal with directions to vacate its decision and reconsider in
light of <u>People v. Soria</u>, 48 Cal. 4th 58 (2010).  Ex. K.  In the
same order, the California Supreme Court denied Petitioner's
petition for review.  Ex. K.  On May 25, 2010, the Court of Appeal
reinstated the original restitution fine and, as modified,
affirmed the judgment.  Ex. L.

Petitioner timely filed the instant petition for a writ of
habeas corpus.

II. Statement of Facts

The California Court of Appeal summarized the facts of this
case as follows:

> The 14-year-old victim was a runaway.  She lived with her 17-
> year-old boyfriend, J. Z., in an apartment on Almaden Avenue.
> Defendant lived in a neighboring apartment.  After an
> argument with J.Z., the victim went to defendant's apartment
> to obtain drugs.  At some point, defendant produced
> methamphetamine and the two smoked the drug. (Count 5.)  The
> two got high and defendant orally copulated the victim.
> (Count 1.)  They then engaged in sexual intercourse. (Count
> 2.)  Afterward, defendant gave the victim money and
> methamphetamine. (Count 6.)  He said that he would hurt her

if she told anybody.  (Count 4.)  FN3  On another occasion, the victim and J.Z. visited defendant at his new apartment on Duane Street and J.Z. gave defendant $20 in exchange for methamphetamine.  (Count 9.)  On another occasion, the two went to the Duane Street apartment, defendant produced methamphetamine, defendant sent J.Z. to Home Depot, defendant and the victim smoked the methamphetamine (count 7) and engaged in sexual intercourse (count 3).  FN4  When J.Z. returned, defendant gave methamphetamine to the victim (count 8) and J.Z. (count 10) who smoked it in the apartment before leaving.

> FN3  The jury acquitted defendant of dissuading a witness by force.

> FN4  The jury failed to reach a verdict on a second count (count 3) of lewd or lascivious acts on a child 14 or 15, and the trial court later dismissed the charge.

Five or six months after the sex-offense incidents, the victim underwent counseling and revealed the incidents to the therapist who reported them to the police.

At trial, defendant's tactic was to impeach the victim with inconsistencies and her delayed reporting of the sex abuse. To this end, defendant had moved the juvenile court to disclose the victim's confidential file and had received some, but not all, of the file.  And he had moved the trial court to review in camera the therapist's records and had received one of four pages.  Over defendant's objections made during in limine proceedings and after the victim testified, Carl Lewis testified as an expert witness concerning CSAAS. According to Lewis, CSAAS is essentially a set of ideas deriving from a study to determine how victims responded to and reported child abuse; its purpose is to counsel the adult community against having preconceived notions about how a child would react; for example, it is common for a child to delay reporting child abuse.  Defendant then introduced his own expert to rebut Lewis's testimony.

Ex. L at 3-4 (footnotes in original).

LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, a district court may not grant habeas relief unless the state court's adjudication of the claim:

4

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  Id. at 409.  Under AEDPA, the writ may be granted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents."  Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).  In the present case, the highest court to issue a reasoned decision on Petitioner's claims is the California Court of Appeal.

DISCUSSION

I. Exclusion of Evidence Impeaching Victim

Petitioner claims that the trial court's exclusion of evidence that the victim previously made a false allegation of a sexual assault involving another perpetrator and another victim violated his due process rights to a fair trial.

A. Court of Appeal Opinion

The California Court of appeal denied this claim, as follows:

During in limine proceedings, defendant sought an admissibility ruling as to evidence that the victim had made false "allegations against an individual saying that someone else was molested by him."  He referred to the police report wherein the victim had stated that her friend B.'s father had molested the victim and also that B. knew that the father had molested their mutual friend, C.  He proffered that C. would testify and deny that the father had molested her.  According to defendant, such evidence would have a "direct bearing on [the victim's] credibility as a witness."  When the trial court asked defendant how C.'s statement would impeach the victim, defendant gave an unsatisfactory answer prompting the trial court to clarify: "But the statement you have from the alleged victim . . . in this case is that [the victim] said [B.] knew that [the father] had done this to someone else." When defendant answered affirmatively, the trial court offered: "So we don't have a statement in the police report or that you have possession of that [the victim] spoke directly to [C.], so I don't even think there is an impeachment value, although maybe you're bridging gaps that

don't lend themselves to be bridged."  Defendant explained:
"Well, my position is more——that frankly, it doesn't even go
to the truth in and of itself, but rather her willingness to
tell the police that someone was molested and that person
adamantly denies it, so that's the reason."  The trial court
concluded as follows: "I understand, but this is really not
impeachment because that doesn't impeach the alleged victim
in any way.  [The victim] is just telling the police, hey,
you ought to know that I've heard that something else is
going on out there with [the father].  But there are no
statements by [the victim] that can be impeached from any
other statements in the police report from [C.].  So for that
reason, I am not going to allow her to testify under Evidence
Code section 350 or 352.  And the court believes there is no
probative value and that obviously the chance of confusion to
the jury would be high, because it took me awhile just to
sort through it myself. . . .

. . .

"[A] prior false accusation of rape is relevant on the issue
of a rape victim's credibility."  (People v. Franklin (1994)
25 Cal.  App. 4th 328, 335.)

. . .

"As with all relevant evidence, however, the trial court
retains discretion to admit or exclude evidence offered for
impeachment."  (People v. Rodriguez (1999) 20 Cal. 4th 1, 9.)
Under section 352, "[t]he court in its discretion may exclude
evidence if its probative value is substantially outweighed
by the probability that its admission will (a) necessitate
undue consumption of time or (b) create substantial danger of
undue prejudice, of confusing the issues, or of misleading
the jury."  "For this purpose, 'prejudicial' is not
synonymous with 'damaging,' but refers instead to evidence
that '"uniquely tends to evoke an emotional bias against
defendant"' without regard to its relevance on material
issues."  (People v. Kipp (2001) 26 Cal. 4th 1100, 1121.)

. . .

Defendant's problem in showing that the trial court abused
its discretion in excluding the evidence is that the evidence
does not necessarily show that the victim made a false
accusation.  The victim said that B. knew that B.'s father
had molested C.  From this, the trial court could have
rationally concluded, as it apparently did, that the victim
was simply repeating what B. had told her rather than making
an accusation against the father.  Thus, the inference that
the victim made a false accusation was weak and C.'s
testimony that the father had not molested her would little
impugn the victim's credibility.  Undoubtedly, as implicitly
recognized by the trial court, the matter would devolve into
a mini-trial involving the victim and collateral witnesses
(B., C., and the father) who would support and counter

United States District Court
For the Northern District of California

whether the victim had in fact accused the father, whether the father had molested C., whether B. knew about the molestation, and whether B. and C. had motives to lie so as to shield the father from exposure.  Excluding such evidence is plainly not arbitrary, capricious, or patently absurd.

. . .

We also find no constitutional error.  The state and federal Constitutions guarantee a criminal defendant the right to confront and cross-examine witnesses against him.  (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.)  Those rights are violated when the government interferes with the exercise of a defendant's right to present witnesses in his own defense.  (People v. Mincey (1992) 2 Cal. 4th 408, 460.) . . . Further, "Central to the Confrontation Clause is the right of a defendant to examine a witness's credibility.  See Davis [v. Alaska (1974) 415 U.S. 308,] 316. . . ."  However, "The right to present exculpatory evidence has limitations. (Taylor v. Illinois (1988) 484 U.S. 400, 410.) . . ." "Exclusion of impeaching evidence on collateral matters which has only slight probative value on the issue of veracity does not infringe on the defendant's right of confrontation." (People v. Greenberger (1997) 58 Cal. App. 4th 298, 350.)

Ex. L at 5-11 (footnote omitted).

B. Federal Authority

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fair trial guaranteed by due process.  Pulley v. Harris, 465 U.S. 37, 41 (1984); Estelle v. McGuire, 502 U.S. 62, 67 (1991); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).  Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.  Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999); Jammal, 926 F.2d at 919.

"[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."  Holmes v. South Carolina, 547 U.S. 319, 324 (2006)

8

(citations omitted); see also Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (due process does not guarantee a defendant the right to present all relevant evidence).  "[T]he introduction of relevant evidence can be limited by the State for a valid reason."  Id. at 53 (internal quotation marks and citation omitted).  But this latitude is limited by a defendant's constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments.  Holmes, 547 U.S. at 324.  Due process is violated only where the excluded evidence had "persuasive assurances of trustworthiness" and was critical to the defense. Chambers v. Mississippi, 410 U.S. 284, 302 (1973).  "Only rarely [has the Supreme Court] held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence."  Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013).

C. Analysis

Petitioner has not shown that the trial court's refusal to allow him to impeach the victim with C's testimony denied him the fundamental right to present a defense.  Most importantly, C's testimony, as found by the state court, provided little or no impeachment value to Petitioner.  The victim had related to the police that B had told her that B's father molested C.  The state court found that the victim was merely repeating what B had told her; the victim was not falsely accusing B's father of molestation.  Therefore, C's testimony that B's father had not molested her would not have impeached the victim.  Further, C's testimony that B's father did not molest her would have confused the jury because the relevance of C's testimony is not readily apparent.  Accordingly, the exclusion of C's testimony, which had

United States District Court
For the Northern District of California

9

little probative value, did not violate Petitioner's due process rights to present his defense.  See Chambers, 410 U.S. at 302 (due process not violated where evidence excluded not critical to defense).

The state court's denial of this claim was not objectively unreasonable.  Accordingly, habeas relief on this claim is denied.

II. Admission of Child Sexual Abuse Accommodation Syndrome Evidence and Concomitant Jury Instructions

Petitioner contends in claims two and three that the trial court violated his due process rights by admitting expert testimony about the CSAAS and by erroneously instructing the jury on the relevance of this evidence.

A. Court of Appeal Opinion

The Court of Appeal denied this claim, as follows.

CSAAS, which was developed as a therapeutic tool to assist mental health professionals, describes five stages or behaviors commonly found in or experienced by children who have been sexually abused, including secrecy, helplessness, entrapment and accommodation, delayed disclosure, and retraction. (People v. Bowker (1988) 203 Cal. App. 3d 385, 389, fn. 3, 392, fn. 8.)  Evidence regarding CSAAS "is admissible solely for the purpose of showing that the victim's reactions as demonstrated by the evidence are not inconsistent with having been molested."  (People v. Housley (1992) 6 Cal. App. 4th 947, 955, quoting Bowker, at 394.) Such evidence, however, "is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident——e.g., a delay in reporting——is inconsistent with his or her testimony claiming molestation."  (People v. McAlpin (1991) 53 Cal. 3d 1289, 1300)  The expert testimony is "admissible for the limited purpose of disabusing a jury of misconceptions it might hold about how a child reacts to a molestation."  (People v. Patino (1994) 26 Cal. App. 4th 1737, 1744.)

Because particular aspects of CSAAS are as consistent with false testimony as true testimony, and there is a possibility that a jury could use the expert evidence to improperly infer

that the abuse occurred, the admission of such evidence is
subject to certain limitations. (Housley, 6 Cal. App. 4th at
955; Bowker, 203 Cal. App. 3d at 393-394; Patino, 26 Cal.
App. 4th at 1744.) First, the CSAAS evidence must be
addressed or tailored to some specific myth or misconception
suggested by the evidence. (Housley, at 955.) "Identifying
a 'myth' or 'misconception' has not been interpreted as
requiring the prosecution to expressly state on the record
the evidence which is inconsistent with the finding of
molestation. It is sufficient if the victim's credibility is
placed in issue due to . . . paradoxical behavior, including
a delay in reporting a molestation." (Patino, at 1744-1745.)
. . . Second, the jury must be admonished that the expert's
testimony is not intended and should not be used to determine
whether the victim's molestation claim is true, but is
admissible solely to show that the victim's reactions are not
inconsistent with having been molested. (Housley, at 955,
958-959.)

. . .

During in limine proceedings, defendant sought to preclude
Lewis's CSAAS expert testimony on the ground that CSAAS is
limited to children molested in the home and inapplicable to
children living with boyfriends. He added that there was a
great danger of prejudice because the jury would use the
CSAAS components as a litmus test. The trial court reserved
ruling on the issue until after the victim testified. After
defendant cross-examined the victim, the prosecutor noted
that defendant had "developed a minimum of three themes, one,
that she is lying, two, that she's not to be believed because
of the delayed report and three, because there was conflicted
reporting from the alleged victim on the alleged sexual
assault." The trial court then explained as follows: "[B]ut
that the secrecy, the accommodation, the delay, conflict, and
the letting out a little bit of information at a time. For
instance, in this case we have it was kissing and then it was
intercourse that she revealed lends itself to an allowance of
the CSAAS and indicates the CSAAS is probative. The
prejudice is very low. There is little chance of confusion
because the jurors understand that Mr. Lewis does not know
the facts of this case so the parts that he is talking about
which don't apply, they don't have to use and the parts he is
talking about that do apply they may or may not use." It
instructed the jury about CSAAS in the language of CALCRIM
No. 1193 before Lewis's testimony and . . . during the jury-
instruction phase of the trial. . . .

. . .

Defendant urges that the admission of the evidence
transgressed his due process rights because the evidence was

11

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

irrelevant and prejudicial.  But we have pointed out that the evidence was highly probative because it helped the jurors to understand that children who are molested sometimes act in ways that are counterintuitive.  The evidence was not unduly prejudicial because it was not geared toward the facts of this case specifically, but was provided as a general explanation of how children who are abused sometimes act.

Defendant finally claims that the trial court erred by instructing the jury in the language of CALCRIM No. 1193 because it "advised the jury to use CSAAS evidence in evaluating the credibility of the alleged victim's testimony, which is the same as telling the jury to use the evidence to determine whether her molestation claim was true."  We disagree.

CALCRIM No. 1193 is simply a cautionary instruction warning jurors they must not consider CSAAS testimony as evidence that the defendant committed the offense, and that they may consider CSAAS evidence only for the limited purpose of determining whether the victim's conduct was inconsistent with the conduct of someone who had been molested.  (See McAlpin, 53 Cal. 3d at 1300-1301 [generally, CSAAS evidence is offered to disabuse a jury of misconceptions it might hold about how a child reacts to a molestation].)  It is true that CALCRIM No. 1193 broadens the scope of CSAAS evidence to allow the jury to consider it in evaluating the victim's credibility.  But, when the victim's credibility is attacked, "[t]he [CSAAS] testimony is pertinent and admissible."  (Patino, 26 Cal. App. 4th at 1745.)  Here, the victim's credibility was in dispute.  Thus, the jury could properly consider CSAAS evidence in weighing the victim's credibility and CALCRIM No. 1193 correctly stated the law in this regard.

Ex. L at 11-16.

B. Federal Authority

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of a fundamentally fair trial guaranteed by due process.  Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999).  Only if there are no permissible inferences that the jury may draw from the evidence may its admission violate due process.  Jammal, 926 F.2d at 920.  Moreover, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence

United States District Court
For the Northern District of California

constitutes a due process violation sufficient to warrant issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009.

A challenge to jury instructions generally does not state a federal constitutional claim. Estelle v. McGuire, 502 U.S. at 72. To obtain federal habeas relief based on instructional error, the petitioner must demonstrate "that an erroneous instruction so infected the entire trial that the resulting conviction violates due process." Id.; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even universally condemned, but that it violated some [constitutional right].'").

C. Analysis

The Ninth Circuit has approved of the California Court of Appeal's holding in People v. Patino, 26 Cal. App. 4th 1737 (1994), that the use of CSAAS evidence in a child abuse case does not necessarily offend a defendant's due process rights. Brodit v. Cambra, 350 F.3d 985, 991 (9th Cir. 2003). In Brodit, the Ninth Circuit cited its previous cases which "held that CSAAS testimony is admissible in federal child-sexual-abuse trials, when the testimony concerns general characteristics of victims and is not used to opine that a specific child is telling the truth." Id.

Petitioner's claim is foreclosed by Brodit. The Ninth Circuit has upheld the use of CSAAS evidence when, as in the instant case, it is used to show the general characteristics of the victim and not for showing that the victim is truthful. Id. Also, because the jury could draw permissible inferences from the

CSAAS evidence, it comports with constitutional requirements.  <u>See</u> <u>Jammal</u>, 926 F.2d at 920.

Further, the trial court instructed the jury as follows:

You have heard evidence regarding child sexual abuse accommodation syndrome.  This testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him. You may consider this evidence only in deciding whether or not Christina's conduct was not inconsistent with the conduct of someone who has been molested and in evaluating the believability of her testimony.

RT at 690.

This instruction meets the requirement set forth under California case law, that the admission of CSAAS evidence must be accompanied by a limiting instruction informing the jury that the expert's testimony should not be used to determine whether the victim's molestation claim is true, but only to decide whether the victim's reactions are consistent with having been molested.  <u>See</u> <u>People v. Housley</u>, 6 Cal. App. 4th 947, 955, 958-59 (1992).  This limiting instruction also ensured that the jury considered the CSAAS evidence as required by <u>Brodit</u>, 350 F.3d at 991.  Thus, the jury instruction, rather than violating Petitioner's constitutional rights, protected his rights by limiting the jury's use of the CSAAS evidence.

Nevertheless, Petitioner argues that the instruction violated his due process rights because it allowed the jury to use the CSAAS evidence to evaluate the victim's credibility.  However, because Petitioner put the victim's credibility in issue, it was permissible for the jury to use this evidence to evaluate her credibility.  <u>See</u> <u>Jammal</u>, 926 F.2d at 920; <u>see</u> <u>also</u>, <u>McAlpin</u>, 53 Cal. 3d at 1300 (CSAAS evidence permissible to rehabilitate witness's credibility when it has been questioned by defendant).

United States District Court
For the Northern District of California

Petitioner has failed to make a showing that the instruction was undesirable, erroneous, universally condemned, or that it violated a constitutional right.  See Donnelly, 416 U.S. at 643.

Therefore, the state court's denial of Petitioner's claims regarding the admission of the CSAAS evidence and the CSAAS jury instruction was not objectively unreasonable.

III. Cumulative Prejudice and Ineffective Assistance of Counsel

In claim four, Petitioner argues that he suffered from cumulative prejudice as a result of the above three claims.  Pet'n at 7.  The Court of Appeal denied the cumulative error claim because it had addressed Petitioner's three claims and found no error.  This Court also has determined that Petitioner's first three claims fail to show constitutional error.  Thus, there can be no cumulative error.  See Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011) (where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation).  This claim is denied.

In claim eight, Petitioner argues that counsel was ineffective for "failing to make proper objections."  Pet'n at 7.[3] On appeal, Petitioner asserted ineffective assistance of counsel as a backup argument in the event the court determined that the first three claims of error were forfeited by counsel's failure to object.  Ex. C at 45.  The appellate court denied this claim as

_____

[3] Because Petitioner did not raise the ineffective assistance of counsel claim in his petition for review to the California Supreme Court, it is unexhausted.  However, this Court may deny it on its merits because it does not constitute a colorable claim for federal habeas relief.  See 28 U.S.C. § 2254(b)(2); Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (unexhausted claim may be denied on the merits when applicant does not raise a colorable federal claim).

moot because it had addressed the three claims on their merits and
found no error.  Ex. H. at 2 n.1.  Furthermore, because there was
no error, counsel could not have been ineffective for failing to
object.  See Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005)
("[T]rial counsel cannot have been ineffective for failing to
raise a meritless objection.").  Petitioner has failed to raise a
colorable claim of ineffective assistance of counsel.  This claim
is denied.

IV. Insufficient Evidence for Finding Separate Offenses
    of Distributing Drugs to a Minor

    Petitioner contends that insufficient evidence supported the
finding that he committed six separate instances of furnishing
drugs to a minor and, thus, the convictions on counts six, seven
and ten should be invalidated.  He also contends that the
punishment for several counts should have been stayed because,
under California Penal Code section 654, multiple punishments for
acts that have one objective are prohibited.

    The California Court of Appeal rejected these claims as
follows:

    Defendant contends that furnishing methamphetamine to the
    victim at the Almaden Avenue apartment after the sex acts
    (count 6) was a cooperative act with furnishing
    methamphetamine to her before the sex acts (count 5).  He
    asserts that the two acts constitute but one offense and
    cannot support multiple convictions.  He similarly reasons
    that furnishing methamphetamine to the victim and J.Z. at the
    Duane Avenue apartment after the sex act (count 7-victim;
    count 10-J.Z.) was a cooperative act with furnishing
    methamphetamine to the victim before the sex act (count 8).
    He concludes that insufficient evidence supports his
    convictions for counts 6, 7, and 10.  We disagree.

    In People v. Lopez (1992) 11 Cal. App. 4th 844, the court
    held that it is permissible to convict a defendant of more
    than one nonincluded offense arising out of a single
    indivisible course of action and that the remedy for such a
    circumstance was found in Penal Code section 654, precluding
    multiple punishment.  (Lopez, at 848.)

. . .

We agree with Lopez.  Thus, if defendant's acts amounted to a
single course of conduct, the remedy is found in the bar
against multiple punishment.

Penal Code section 654 provides, in relevant part: "[a]n act
or omission that is punishable in different ways by different
provisions of law shall be punished under the provision that
provides for the longest potential term of imprisonment, but
in no case shall the act or omission be punished under more
than one provision."  The purpose of the statute is "to
prevent multiple punishment for a single act or omission,
even though that act or omission violates more than one
statute and thus constitutes more than one crime.  Although
the distinct crimes may be charged in separate counts and may
result in multiple verdicts of guilt, the trial court may
impose sentence for only one offense——the one carrying the
highest punishment."  (People v. Liu (1996) 46 Cal. App. 4th
1119, 1135.)  The section's protection extends to cases in
which a defendant engages in a course of conduct that
violates different offenses and comprises an indivisible
course of conduct punishable under separate statutes.
(People v. Harrison (1989) 48 Cal. 3d 321, 335.)  As this
court explained in People v. Braz (1997) 57 Cal. App. 4th 1,
10, multiple punishment is permissible notwithstanding Penal
Code section 654 if the defendant "entertained multiple
criminal objectives which were independent of and not merely
incidental to each other.  [Citation.]  A defendant's
criminal objective is 'determined from all the circumstances
and is primarily a question of fact for the trial court,
whose findings will be upheld on appeal if there is any
substantial evidence to support it.'"  We must view the
evidence in a light most favorable to the respondent and
presume in support of the judgment the existence of every
fact the trier could reasonably deduce from the evidence.
(People v. McGuire (1993) 14 Cal. App. 4th 687, 698.)  The
proper procedure for disposing of a term banned by Penal Code
section 654 is to impose and stay the sentence.  (People v.
Dominguez (1995) 38 Cal. App. 4th 410, 420.)

Defendant contends that his punishment for the sex-acts
counts (counts 1 & 2) and after-sex-acts furnishing count at
the Almaden Avenue apartment (count 6) should be stayed
because they "shared the same objective of distributing drugs
in exchange for sexual favors" for which he was punished
under his conviction for count 5.  He similarly argues that
the punishment for counts 7 and 10 "must be stayed in lieu of
the punishment for count eight because [he] shared the same
objective."  According to defendant, "in both instances, [he]
shared a single objective to provide drugs to [the victim]
(for sex or for recreational purposes)."  There is no merit
to defendant's contention.

17

The trial court was not required to make the inferences that defendant makes. There was no direct testimony as to defendant's intent. The trial court could therefore have accepted that defendant acceded to the victim's request for methamphetamine when she first appeared at defendant's Almaden Avenue apartment. (Count 5.) It could have then accepted that the two decided to have sex after getting high. (Counts 1 & 2.) It could have further accepted that defendant gave the victim more methamphetamine to encourage the victim's silence about the sex acts. (Count 6.) The same can be said for the before-(count 7) and after-(count 8) sex furnishings at the Duane Avenue apartment. As to count 10, the trial court could certainly have viewed that act of furnishing as displaying an independent objective. The act was separate from counts 7 and 8 given that defendant furnished to the victim in counts 7 and 8 while he furnished to J.Z. in count 10; and the act was separate from count 9 given that defendant furnished to J.Z. in count 10 at a separate time than he furnished to J.Z. in count 9.

Ex. L at 16-19 (footnote omitted).

A. Insufficient Evidence to Support Convictions

Respondent argues that this is not a constitutional claim because Petitioner contends his acts constituted one offense under state law, not federal law. However, in his petitions to the California Court of Appeal and Supreme Court, Petitioner's claim is for "insufficient evidence" to support each conviction for distributing drugs to a minor and cites Jackson v. Virginia, 443 U.S. 307 (1979), the leading Supreme Court case on due process violations based on insufficient evidence. Therefore, the Court finds this claim could be viewed as a federal constitutional claim.

1. Relevant Facts

At trial, Petitioner did not testify; the evidence regarding the events at issue was based on the testimony of the victim and her boyfriend, J.Z.

The victim testified as follows. The victim first went to Petitioner's Almaden Avenue apartment when she was angry at J.Z. She thought Petitioner was her friend and she could get drugs from

18

**United States District Court**
For the Northern District of California

him. RT at 94, 107. Petitioner had never before made any sexual advances toward her and she did not suspect he would make any to her when she went to see him. RT at 107. Petitioner and the victim smoked methamphetamine in his room and he told her, "When I get high, I get really, really horny." RT at 108. Then he asked her to take off her pants and underwear and he put his tongue and lips on her vagina. RT at 98-100, 108. Petitioner then had intercourse with her. RT at 100-01. During intercourse, Petitioner told her not to tell anybody because he did not want to go back to prison. RT at 101. After intercourse, Petitioner gave the victim some money and more methamphetamine and she left his apartment. RT at 104.

On another occasion, the victim and J.Z. went to Petitioner's Duane Street apartment to obtain methamphetamine from Petitioner. RT at 109. When they arrived at Petitioner's apartment, another person was there smoking methamphetamine with Petitioner. RT at 112. Petitioner gave the victim and J.Z. methamphetamine and the four of them smoked methamphetamine in Petitioner's apartment. RT at 112. Then J.Z. and Petitioner's friend went to a store because something in Petitioner's house was broken and needed to be fixed. RT at 113. When the victim was alone with Petitioner, he had intercourse with her. RT at 114-15.

J.Z. testified as follows regarding the events that occurred at Petitioner's Duane Street apartment. J.Z. and the victim went to get methamphetamine from Petitioner and thought if they helped him fix his house, he would give them methamphetamine in exchange. RT at 313. When they arrived at Petitioner's house, Petitioner and a friend were smoking methamphetamine and Petitioner give J.Z. and the victim some to smoke with them. RT at 320. Petitioner

asked J.Z. and his friend to go to Home Depot to buy something that was needed to fix Petitioner's house.  RT at 319-20; 388.  Petitioner wanted the victim to stay with him.  RT at 388.  J.Z. and the friend went to Home Depot and, when they got back about a half an hour later, the victim was vacuuming.  RT at 320-21; 388.  Petitioner gave the victim and J.Z. some methamphetamine; they smoked some of it in his apartment, and then they left.  RT at 321.  J.Z. did not learn that Petitioner had sex with the victim until sometime after it occurred.  RT at 353, 396-98.

The prosecution charged six separate counts of furnishing methamphetamine to a minor: (1) count five, at her first visit to Petitioner at the Almaden apartment, after she arrived, Petitioner shared methamphetamine with her before he orally copulated her and had intercourse with her; (2) count six, after sex, Petitioner gave the victim methamphetamine; (3) count seven, during the victim's second visit to Petitioner at the Duane apartment, he gave her methamphetamine before sex; (4) count eight, Petitioner gave the victim methamphetamine after sex; and (5) count ten, Petitioner gave J.Z. methamphetamine after he returned to Petitioner's apartment from Home Depot.[4]

2. Federal Authority

A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim, see Jackson, 443 U.S. at 321, which, if proven, entitles him to federal habeas

---

[4] Count nine, which concerned Petitioner selling J.Z. twenty dollars' worth of methamphetamine on a different occasion, is not at issue here.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

relief, see id. at 324.  However, "Jackson claims face a high bar
in federal habeas proceedings . . ."  Coleman v. Johnson, 132 S.
Ct. 2060, 2062 (2012) (per curiam).  A federal court reviewing
collaterally a state court conviction does not determine whether
it is satisfied that the evidence established guilt beyond a
reasonable doubt.  Payne v. Borg, 982 F.2d 335, 338 (9th Cir.
1992).  The federal court "determines only whether, 'after viewing
the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.'"  Id. (quoting Jackson, 443
U.S. at 319).  Only if no rational trier of fact could have found
proof of guilt beyond a reasonable doubt has there been a due
process violation.  Jackson, 443 U.S. at 324.

Generally, a federal habeas court must ask whether the
operative state court decision reflected an unreasonable
application of Jackson to the facts of the case.  Coleman, 132 S.
Ct. at 2062; Juan H v. Allen, 408 F.3d 1262, 1275 (9th Cir. 2005).
If confronted by a record that supports conflicting inferences, a
federal habeas court "must presume—even if it does not
affirmatively appear in the record—that the trier of fact
resolved any such conflicts in favor of the prosecution, and must
defer to that resolution."  Jackson, 443 U.S. at 326.

3. Analysis

Petitioner contends that counts five and six, which were
charged for the events that occurred at the Almaden Avenue
apartment, were part of the same transaction of providing the
victim with methamphetamine in exchange for sex; therefore, count
six should be vacated.  Similarly, he contends that counts seven,
eight and ten, which were charged for the events that occurred at

the Duane Street apartment, were part of the same transaction of exchanging methamphetamine for sex; thus, counts eight and ten should be vacated.

The Court of Appeal did not address this claim under the Jackson sufficiency of the evidence standard.  Instead, the court ruled that, under California law, it was permissible to convict a defendant of more than one offense arising out of a single indivisible course of action and that any problem with multiple punishments would be addressed under California Penal Code section 654, which precludes multiple punishments.  However, in the court's analysis of Petitioner's claim addressing section 654, it reviewed the evidence and found it was sufficient to support each conviction for distributing methamphetamine to a minor.

The record supports the finding that sufficient evidence supports each conviction.  The victim testified that she considered Petitioner to be a friend and he had never made sexual advances to her.  When the victim went to Petitioner's Almaden apartment, she never anticipated that he would want sex.  It was only after Petitioner gave the victim methamphetamine and she got high that he asked her for sex.  At that point, she was feeling the effects of the methamphetamine, and she followed Petitioner's orders, to take off her pants and underpants.  Then, he orally copulated her and had intercourse with her.  The victim's testimony does not show that these events were a business transaction of sex for methamphetamine.  This is substantiated by the fact that the victim told her therapist, and then the police, that Petitioner had raped her.  After sex, Petitioner gave her more methamphetamine either to keep her quiet or because he was

**United States District Court**
For the Northern District of California

feeling guilty.  No evidence shows that the methamphetamine after Petitioner had sex with the victim was payment for sex.

Similarly, at the Duane Street apartment, Petitioner first gave the victim and J.Z. methamphetamine so they would get high. Petitioner then asked J.Z. and his friend to go to Home Depot, so he would be alone with the victim.  When they were alone, Petitioner again asked the victim for sex.  Again, no evidence indicates that the victim thought she was paying for the methamphetamine by allowing Petitioner to have intercourse with her.  When J.Z. returned, Petitioner gave them both more methamphetamine.  J.Z. thought Petitioner gave him the methamphetamine in exchange for his trip to Home Depot.  No evidence indicates the methamphetamine was payment for sex. Tellingly, at this time, J.Z. did not know that Petitioner and the victim had sex, so Petitioner could not have given methamphetamine to J.Z. in payment for sex with the victim.  Petitioner's interpretation of the events at the Almaden and Duane apartments is based on pure speculation because no evidence shows that his providing methamphetamine to the victim and J.Z. was payment for sex.

Viewed in a light most favorable to the prosecution, more than sufficient evidence supports the jury's findings beyond a reasonable doubt that the events at the Almaden apartment constituted two separate instances of providing the victim with methamphetamine and that the events at the Duane apartment constituted two instances of providing the victim with methamphetamine and one instance of providing J.Z. with methamphetamine.  The Court of Appeal's determination of the facts

United States District Court
For the Northern District of California

23

United States District Court
For the Northern District of California

was not unreasonable in light of the evidence presented at the state court proceeding.

Petitioner also cites the transcript of his sentencing hearing, arguing that the trial court found counts seven and eight were part of the same transaction and count ten "was part of the same transaction." Pet'n. at 22 (citing 6 RT 1011-12). However, a review of these pages shows that the trial court was merely reciting the penal code violations for each count, the range of sentences for each count, and the sentence it imposed for each count. 6 RT 1011-12. Petitioner's conclusion that the trial court found that the counts were part of the same transaction is without merit.

The insufficiency of the evidence claim is denied.

B. Staying Punishment for Several Counts

In regard to the staying of punishments under section 654, Petitioner again argues that all the events were part of two transactions of exchanging sex for methamphetamine. Here he argues that, in the event that counts six, seven and ten are not vacated, their sentences should be stayed under section 654 and, in addition, the sentences for the sex crimes counts should also be stayed because they also are part of the transaction of trading sex for methamphetamine.

This claim focuses on the Court of Appeal's interpretation of Penal Code section 654, which prohibits multiple punishments when the defendant acts with only one objective. To the extent that Petitioner argues that state law was incorrectly applied, any such claim is denied. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In

conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citations omitted)); see also Bueno v. Hallahan, 988 F.2d 86, 88 (9th Cir. 1993) (federal habeas courts must defer to state courts' interpretations of their own state laws, including state sentencing laws).  This Court must defer to the Court of Appeal's interpretation of its own sentencing law.

Furthermore, to the extent that Petitioner again argues, under Jackson, that insufficient evidence establishes that the counts were part of separate transactions, the claim fails for the same reasons discussed above.

Habeas relief on this claim is denied.

V. Failure to Disclose Victim's Confidential Records

Petitioner contends that the trial court denied him due process by failing to disclose information from the victim's juvenile court file and confidential psychological file.

At a pre-trial hearing, the court stated that it had obtained the victim's patient file from her therapist, had reviewed it in camera, had found the only relevant information was the therapist's notes about the victim's interaction with Petitioner regarding drugs and ordered disclosure of this information.  RT at 59.  At the same hearing, defense counsel brought to the court a copy of the victim's juvenile court file and requested that he be allowed to impeach her with crimes of moral turpitude.  RT at 60. The court ruled that the victim could be impeached with a prior assault, and could not be impeached with an alleged lie that she was not a gang member; the court did not determine if she could be impeached with an offense of false identification.  RT at 65. When the victim testified, she admitted she had committed the

United States District Court
For the Northern District of California

misdemeanors of assault and giving a false name to a police

officer.  RT at 119-20.

The Court of Appeal addressed this claim as follows:

Defendant asks that we review the victim's juvenile court
file and therapist's records, which were not disclosed, to
determine whether they were material and should have been
disclosed.  (People v. Martinez (2009) 47 Cal. 4th 399, 453.)
The files and records were transmitted to us under seal.
Defendant directs us to an envelope designating sealed pages
15 through 70 from the juvenile court.  FN5  And the
therapist's records are in a sealed envelope together with a
settled statement from the trial court.

FN5  There is a second envelope of juvenile court files
designating sealed pages 5 through 36.  The content
shows that this envelope contains what the juvenile
court disclosed to defendant.

"We have reviewed the entire confidential juvenile court and
superior court files, and have concluded that the undisclosed
information was not material to the defense.  In addition,
having reviewed the confidential file[s], we conclude the
contents do not support any claim that further disclosure is
required to protect defendant's right to a fair appeal."
(People v. Martinez, 47 Cal. 4th at 454, fn. omitted.)

Ex. L at 4-5.

As stated above, a state court's evidentiary ruling is not

subject to federal habeas review unless the ruling violates

federal law, either by infringing upon a specific federal

constitutional or statutory provision or by depriving the

defendant of the fair trial guaranteed by due process.  Pulley,

465 U.S. at 41; Estelle, 502 U.S. at 67.  Due process is violated

only where the excluded evidence had "persuasive assurances of

trustworthiness" and was critical to the defense.  Chambers, 410

U.S. at 302.

Petitioner first argues that he has a right to review the

victim's juvenile court file for impeachment evidence.  However,

this argument is belied by the record which indicates that defense

United States District Court
For the Northern District of California

counsel brought the victim's juvenile court file to the trial court and asked the court for permission to impeach the victim with specific crimes he had found from his review of her file. See RT at 60-65.  Therefore, this claim is denied.

Second, Petitioner argues that he has a right to require the court to review in camera the victim's confidential psychological files for exculpatory evidence.  This argument is also undermined by the record which indicates that both the trial court and the Court of Appeal reviewed the victim's juvenile court file and her therapist's records and found no exculpatory evidence that had not been disclosed to the defense.  RT at 59; Ex. H at 4.

Next, Petitioner argues that he has a constitutional right to pre-trial disclosure of the information in the psychologist's report because, even if the information itself was inadmissible, it may have led to admissible evidence.

In Pennsylvania v. Ritchie, 480 U.S. 39, 58 (1987), the Supreme Court held that a criminal defendant's due process rights entitled him to have the confidential files of an adverse witness "reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of the trial."  However, it also held that the defendant's right to discover exculpatory evidence does not include the authority to search unsupervised through the witness's confidential files and that the defendant has no constitutional right to conduct his own search of the confidential files to argue relevance.  Id. at 59.

Thus, under Supreme Court precedent, Petitioner was entitled to have the victim's confidential information reviewed by the trial court to determine whether it contained material information that probably would have changed the outcome of his trial.  As

United States District Court
For the Northern District of California

discussed above, the trial court reviewed in camera the
confidential psychological files of the victim's therapist, found
one page relevant to Petitioner's case and ordered disclosure of
that information.  The trial court found the remaining information
did not contain material information and returned the file to the
therapist.  On appeal, the Court of Appeal also reviewed the
therapist's confidential files and found that Petitioner had
received all the information that was material to his defense.

Therefore, Petitioner received all the process to which he
was constitutionally due in regard to access to the victim's
confidential psychological files.  The state court's denial of
this claim was not objectively unreasonable.

VI. Insufficient Evidence of a Prior Strike Conviction

Petitioner contends that insufficient evidence supported the
trial court's conclusion that his prior conviction constituted a
strike under California's three strikes law.  The Court of Appeal
found the trial court's determination correct under state law, and
rejected Petitioner's claim.  Ex. L at 19.

Petitioner is not entitled to habeas relief on this claim.
First, whether Petitioner's prior conviction constitutes a strike
is a matter of state law.  Violations of state law are not
remediable on federal habeas review, even if the state law was
erroneously interpreted or applied.  See Swarthout v. Cooke, 131
S. Ct. 859, 861-62 (2011).  Second, even if state law violations
were cognizable, a federal habeas court is bound by the state
appellate court's determination that the prior conviction
constituted a strike.  See Bradshaw v. Richey, 546 U.S. 74, 76
(2005) (federal habeas court may not ignore state court's
interpretation of its own law).  This claim is denied.

United States District Court

For the Northern District of California

VII. Certificate of Appealability

     The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling. Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

     A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability.  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

     The Court finds that reasonable jurists would not find its assessment of any claim debatable or wrong.  Therefore, a certificate of appealability is denied.

     Petitioner may not appeal the denial of a certificate of appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254 Cases.

                         CONCLUSION

     Based on the foregoing, the petition for a writ of habeas corpus and a certificate of appealability are denied.  The Clerk

//

//

of the Court shall enter a separate judgment and close the file.

IT IS SO ORDERED.


Dated: 3/11/2014

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE